UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| JULIE BERRY,<br><br>Plaintiff,<br><br>v.<br><br>ROB KOLKMAN; and CONSTABLE KOLKMAN LLC,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING JOHN SINDT'S MOTIONS FOR A PROTECTIVE ORDER (DOC. NOS. 69 & 86) AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS AND AWARD OF EXPENSES (DOC. NO. 83)**<br><br>Case No. 2:24-cv-00705<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

Julie Berry brought this action against Rob Kolkman, Constable Kolkman LLC, and others, claiming they violated the Fair Debt Collection Practices Act and engaged in fraud while attempting to collect a debt from her in 2023 and 2024.[1]  Ms. Berry deposed nonparty John Sindt, a former constable who retired in 2019 and previously employed Mr. Kolkman.  Mr. Sindt's attorney ended the deposition after two and a half hours, asserting it was being conducted in bad faith and used to unreasonably annoy and embarrass Mr. Sindt.

Ms. Berry and Mr. Sindt have now filed motions relating to the deposition.  Mr. Sindt moved for a protective order ten days after the deposition, seeking to preclude Ms. Berry from resuming it—or, alternatively, seeking to limit it to one hour on

---

[1] (*See* Compl., Doc. No. 2); 15 U.S.C. § 1692 et seq.  The other defendants, Olson Associates P.C. and NAR Inc., have been dismissed.  (*See* Doc. No. 80.)

nonduplicative topics, under the court's supervision.[2]  Mr. Sindt filed a supplemental motion for a protective order after the transcript became available.[3]  For her part, Ms. Berry moves for sanctions and an award of expenses against Mr. Sindt's attorney, James Tily, arguing he impeded the deposition.[4]

The deposition transcript shows Ms. Berry's attorney, Eric Stephenson, used the deposition to unreasonably annoy, embarrass, and oppress Mr. Sindt.  Among other examples, discussed below, Mr. Stephenson told Mr. Sindt he didn't "deserve the constable's office title."[5]  Mr. Stephenson's conduct merits termination of Mr. Sindt's deposition, and no further deposition of him will be permitted.  Accordingly, Mr. Sindt's motions for a protective order are granted.  And because Mr. Tily did not impede, delay, or frustrate a fair examination of Mr. Sindt, Ms. Berry's motion is denied.

## LEGAL STANDARDS

Under Rule 30(d)(1) of the Federal Rules of Civil Procedure, a deposition is limited to one day of seven hours unless otherwise stipulated or ordered.[6]  The court "must allow additional time . . . if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the

---

[2] (Mot. for Protective Order Under Fed. R. Civ. P. 26(c) to Limit Further Dep. of Movant and Nonparty John Sindt (First Mot. for PO), Doc. No. 69.)

[3] (Nonparty John Sindt's Suppl. Mot. for Protective Order Under Fed. R. Civ. P. 26(c) (Second Mot. for PO), Doc. No. 86.)

[4] (Mot. for Sanctions and Award of Expenses (Mot. for Sanctions), Doc. No. 83.)

[5] (Ex. P-1 to Mot. for Sanctions, Dep. of John Allen Sindt (Sindt Dep.) 84:11–12, Doc. No. 83-1.)

[6] Fed. R. Civ. P. 30(d)(1).

examination."[7]  Subsection (d)(2) provides: "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."[8]

Under Rule 30(d)(3), "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."[9]  "If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order."[10]  "The court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c)."[11]

Rule 26(c) permits courts, "for good cause," to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[12]  As relevant here, this may include "forbidding the disclosure or discovery"; "specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery"; or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."[13]

---

[7] *Id.*

[8] Fed. R. Civ. P. 30(d)(2).

[9] Fed. R. Civ. P. 30(d)(3)(A).

[10] *Id.*

[11] Fed. R. Civ. P. 30(d)(3)(B).

[12] Fed R. Civ. P. 26(c)(1).

[13] Fed. R. Civ. P. 26(c)(1)(A), (B), (D).

**ANALYSIS**

Mr. Sindt and Ms. Berry each accuse the other's attorney of improper conduct during Mr. Sindt's deposition.  Mr. Sindt contends Ms. Berry's attorney, Mr. Stephenson, conducted the deposition in bad faith and in an unreasonably oppressive manner.[14] According to Mr. Tily, Mr. Stephenson "repeatedly asked the same or substantially similar questions in slightly rephrased form despite Mr. Sindt having already answered the question multiple times to the best of his ability."[15]  Mr. Stephenson's "tone and manner during most of the deposition [were] hostile, argumentative, and uncivil."[16]  Mr. Stephenson's "questioning and side comments accompanying his questions appeared intended to harass, embarrass and confuse Mr. Sindt rather than to obtain legitimate discovery."[17]  Mr. Stephenson "seemed focused on matters witnessed or performed by Mr. Sindt around 20 or 30 years ago or more, unrelated to the current action."[18]  Mr. Sindt, who is 81 years old, "became visibly shaken, disoriented, and confused," and "[h]is demeanor and responses made clear that he was no longer in a mental condition to continue."[19]  Mr. Tily terminated the deposition under Rule 30(d)(3)(A) after "multiple objections and warnings on the record."[20]

---

[14] (First Mot. for PO, Doc. No. 69.)

[15] (Aff. of James H. Tily (Tily Aff.) ¶ 11, Doc. No. 69-1.)

[16] (*Id.* ¶ 12.)

[17] (*Id.*)

[18] (First Mot. for PO 3, Doc. No. 69.)

[19] (Tily Aff ¶ 17, Doc. No. 69-1.)

[20] (*Id.* ¶ 18.)

Ms. Berry, on the other hand, contends Mr. Tily impeded, delayed, and frustrated the deposition by making improper objections and terminating it unilaterally without first filing a motion for a protective order.[21]  According to Ms. Berry, Mr. Tily repeatedly asserted improper "asked and answered" objections; labeled proper lines of questioning as "harassing," "embarrassing," "annoying," or "in bad faith"; made numerous references to Mr. Sindt's age and ability to remember; and at times prevented Mr. Sindt from properly answering.[22]  Ms. Berry contends these interruptions "had the practical effect of coaching the witness or obstructing responsive testimony."[23]  And she claims Mr. Tily needed to file a motion or contact the court for assistance before unilaterally terminating the deposition.[24]

First, the timing of Mr. Sindt's motion for a protective order is addressed, then, each attorney's conduct.

1.  <u>Timing of Mr. Sindt's Motion for a Protective Order</u>

Mr. Tily was not required to file a motion before suspending the deposition, and Mr. Sindt's motion for a protective order was timely under the circumstances.  Rule 30(d)(3) permits a deponent to move to terminate or limit a deposition "[a]t any time *during* a deposition."[25]  Based on this language, Ms. Berry argues Mr. Tily was required

---

[21] (Mot. for Sanctions 2, Doc. No. 83.)

[22] (*Id.* at 5–6.)

[23] (*Id.* at 6.)

[24] (*Id.* at 2–3.)

[25] Fed. R. Civ. P. 30(d)(3)(A) (emphasis added).

to file a motion before ending the deposition.[26]  But the rule also provides, at the objecting deponent's demand, "the deposition must be suspended for the time necessary to obtain an order."[27]  And Rule 30(c)(2) permits an attorney to instruct a deponent not to answer "to present a motion under Rule 30(d)(3)."[28]  Courts have interpreted these provisions to allow a deponent's attorney to unilaterally suspend a deposition in order to present a motion under Rule 30(d)(3).[29]  In other words, an attorney need not actually file a motion before suspending the deposition.

Ms. Berry relies on several cases finding an attorney must make efforts to contact the court before unilaterally terminating a deposition under Rule 30(d)(3).[30]  These decisions are not controlling.  But even if such efforts were required, Mr. Tily made adequate efforts in this case, as described below.

---

[26] (Mot. for Sanctions 2–3, Doc. No. 83.)

[27] Fed. R. Civ. P. 30(d)(3)(A).

[28] Fed. R. Civ. P. 30(c)(2).

[29] *See Cerda v. Cillessen & Sons*, No. 19-1111, 2020 U.S. Dist. LEXIS 139456, at *3 (D. Kan. Aug. 5, 2020) (unpublished) ("Rule 30(d)(3) permits a deponent or party to suspend a deposition in order to present to the court a motion alleging the deposition is being conducted in bad faith or in an unreasonable manner."); *McClelland v. Blazin' Wings, Inc.*, 675 F. Supp. 2d 1074, 1081 (D. Colo. 2009) (finding an attorney properly instructed a witness not to answer until he could file a motion under Rule 30(d)(3)(A), and noting a motion for protective order "was promptly filed after the deposition was terminated"); *see also Boulder Falcon, LLC v. Brown*, 345 F.R.D. 511, 525 & n.104 (D. Utah 2023) (noting Rule 30(d) "requires that the motion for protective order after stopping a deposition be filed rather quickly thereafter," but finding a motion filed two weeks after stopping the deposition was timely).

[30] *See Pipeline Prods. v. Madison Cos., LLC*, No. 15-4890, 2018 U.S. Dist. LEXIS 116933, at *6 (D. Kan. July 13, 2018) (unpublished); *Hearst/ABC-Viacom Entm't Servs. v. Goodway Mktg., Inc.*, 145 F.R.D. 59, 62 (E.D. Pa. 1992).

Mr. Stephenson called the court twice during the deposition and left voicemails requesting assistance, asserting Mr. Sindt was refusing to answer yes-or-no questions.[31]  Mr. Tily also expressed his position during these calls.  In the first call (just before a 10:39 a.m. recess), Mr. Tily stated:

> I've continued to object based upon harassment and this witness being unduly burdened and this deposition is being conducted in bad faith.  It is being used to unreasonably annoy and embarrass the witness who is 81 years old, and I'm going to need to end this under Federal Rule of Civil Procedure 30(d)(3)(a) if—if my client continues to be unreasonably annoyed and embarrassed by these—by these questions.[32]

In the second call to the court, a few minutes later, Mr. Tily again stated the deposition was being conducted in bad faith under Rule 30(d)(3)(A).  He indicated the deposition would "end under that rule" if the harassing questions continued.[33]

The clerk's office immediately returned Mr. Stephenson's second call and informed him the voicemail had been forwarded to chambers.[34]  At 11:05 a.m., a law clerk emailed Mr. Stephenson and other counsel of record in this case, indicating the court was available for a virtual conference that afternoon and asking the parties to briefly describe the dispute.[35]  But this email was not sent to Mr. Tily (a nonparty's

---

[31] (Sindt Dep. 69:22–71:1 (first voicemail), 77:22–80:7 (second voicemail), Doc. No. 83-1.)

[32] (*Id.* at 70:3–11.)

[33] (*Id.* at 78:8–23.)

[34] (*Id.* at 81:5–14.)

[35] (Ex. P-2 to Mot. for Sanctions, Email from the Court, Doc. No. 83-2.)  Noting portions of the voicemail were inaudible, the clerk asked the parties to "respond to this email with a brief description of the dispute and each party's position."  In the email, the clerk indicated the court would either schedule a virtual conference or instruct the parties to file a motion, depending on the issue.

attorney).[36]  And the record contains no indication he or Mr. Stephenson knew of the email by the time Mr. Tily ended the deposition an hour later.

In sum, Mr. Tily had already raised the possibility of terminating the deposition under Rule 30(d)(3) during Mr. Stephenson's calls to the court.  The attorneys were awaiting the court's response, apparently unaware of the email offering a conference that afternoon.  Mr. Tily continued to object under Rule 30(d)(3) and, approximately an hour and a half after the first call to the court, he ended the deposition pursuant to that rule.[37]  Under these circumstances, Mr. Tily was not required to re-contact the court before suspending the deposition.

Mr. Sindt's post-deposition motion was also not untimely.  Decisions vary regarding how quickly a motion for a protective order must be filed after suspending a deposition under Rule 30(d)(3), but courts have found motions filed two weeks or more after the deposition timely.[38]  Here, Mr. Sindt filed a motion for a protective order ten days after the deposition.  While the motion could have been filed sooner, a ten-day delay is not excessive.  Considering all the circumstances, Mr. Sindt's motion for a protective order was timely.

---

[36] Where Mr. Tily represented a nonparty deponent, he was not listed as an attorney of record on the docket.  And his contact information was not provided in Mr. Stephenson's voicemails.

[37] (Sindt Dep. 140:17–24, Doc. No. 83-1.)  A recess was taken immediately after the first voicemail, at 10:39 a.m.  (*Id.* at 71:3.)  Mr. Tily ended the deposition at 12:02 p.m.  (*Id.* at 141:14.)

[38] *See Boulder Falcon*, 345 F.R.D. at 525 n.104 (finding a motion filed within two weeks of suspending the deposition timely); *City of Owensboro v. Ky. Utils. Co.*, No. 04-cv-00087, 2007 U.S. Dist. LEXIS 24615, at *2–3 (W.D. Ky. Mar. 29, 2007) (unpublished) (granting a motion for protective order filed seventeen days after a deposition's early termination under Rule 30(d)).

2.  <u>Mr. Stephenson's Conduct Merited Termination of the Deposition</u>

Mr. Sindt's contention that Mr. Stephenson conducted the deposition in a hostile, argumentative, and uncivil manner is borne out by the transcript.  Mr. Stephenson also asked repetitive questions on topics with little discernible relevance to this action, concerning events long predating the defendants' alleged attempts to collect a debt from Ms. Berry in 2023 and 2024.  Some illustrative, though not exhaustive, examples are summarized below.  Most notably, Mr. Stephenson directly maligned Mr. Sindt by telling him he "[didn't] deserve the constable's office title."[39]  This disparaging remark, combined with Mr. Stephenson's uncivil conduct throughout the deposition, demonstrates Mr. Stephenson conducted the deposition in a manner that unreasonably annoyed, embarrassed, and oppressed Mr. Sindt, a nonparty.

At the outset, Mr. Tily explained he was covering the deposition for another attorney, Greg Skordas, who had been seriously injured in an accident the day before.[40]  Mr. Stephenson then asked Mr. Sindt repeatedly about his relationship with Mr. Skordas, including when they first came into contact, how he knew Mr. Skordas, whether he had a personal relationship with Mr. Skordas, and whether he was "friends with [Mr.] Skordas in a personal world."[41]  Mr. Tily objected to the latter two questions as irrelevant, burdensome, and harassing.[42]  Mr. Stephenson then threatened to "call the

---

[39] (Sindt Dep. 84:11–12, Doc. No. 83-1.)

[40] (*Id.* at 4:10–17.)

[41] (*Id.* at 7:7–10:16.)

[42] (*Id.* at 8:20–21, 9:7–8, 10:17–18.)

judge" if Mr. Tily made another relevance objection.[43]  Mr. Tily clarified he was objecting based on harassment and burden because Mr. Sindt's relationship with his attorney was "of no concern to this matter."[44]

Mr. Stephenson next questioned Mr. Sindt extensively about whether he had intentionally avoided service of the deposition subpoena.[45]  At several points, after apparently innocuous answers or requests for clarification by Mr. Sindt, Mr. Stephenson made argumentative comments, including stating: "You don't get to ask me questions, sir"; "Please don't interrupt my questioning with—with nonsense"; and "I don't have to battle back with you back and forth on simple questions."[46]  After lengthy and repetitive questioning regarding service, Mr. Tily objected based on burden and harassment— stating that "continuing to ask this is badgering him," noting Mr. Sindt was 81 years old, and requesting that Mr. Stephenson "please ask questions civilly."[47]  Mr. Stephenson insisted he was not being uncivil and continued to question Mr. Sindt on this topic.[48]

---

[43] (*Id.* at 9:10–11.)

[44] (*Id.* at 9:25–10:5.)

[45] (*See id.* at 10:20–21:16.)  The court granted Ms. Berry's motion for alternative service of the deposition subpoena, finding Ms. Berry had shown "reason to believe Mr. Sindt [was] avoiding service."  (Mem. Decision & Order Granting Pl.'s Mot for Alternative Service, Doc. No. 56.)

[46] (Sindt Dep. 15:15, 17:14–15, 19:7–8, Doc. No. 83-1.)

[47] (*Id.* at 20:11–18.)

[48] (*Id.* at 20:21–21:10.)

Mr. Stephenson then gave what he described as instructions,[49] which included asking Mr. Sindt whether he understood that "[Mr. Tily's] job is to be, basically, a potted plant where he sits and listens and objects when necessary, and only when necessary."[50]  Mr. Tily objected to this characterization of his role.[51]  Mr. Stephenson continued: "His job is to object when necessary and only when necessary.  Not to object to interrupt me, not to interrupt to make me angry, not to interrupt to coach you."[52]  Mr. Tily objected again, and Mr. Stephenson interjected: "Stop there.  Stop there.  You are not here to do this.  I'm asking him a question.  I've just given him instructions, and I'm asking if he understands the instructions.  That's not a big deal."[53]  Contrary to Mr. Stephenson's assertions, these were not merely neutral deposition instructions; the language he used was hostile, argumentative, and demeaning.

Later, Mr. Stephenson repeatedly asked Mr. Sindt what debtors "believed" when they received notices of sale from him, and whether he wanted debtors to believe the notices were "true."[54]  Mr. Sindt stated he didn't know what the debtors believed—to which Mr. Stephenson responded: "I think you do."[55]  Mr. Sindt also explained what *he* believed the notice of sale meant and what he told debtors when they called him about

---

[49] (*Id.* at 23:24.)

[50] (*Id.* at 25:12–14.)

[51] (*Id.* at 25:15–22.)

[52] (*Id.* at 26:5–8.)

[53] (*Id.* at 26:10–20.)

[54] (*See id.* at 62:15–68:15.)

[55] (*Id.* at 64:1–2.)

11

the notices.[56]  Eventually Mr. Tily objected that continuing to ask questions about debtors' beliefs was badgering, burdening, and harassing Mr. Sindt.[57]  When Mr. Stephenson continued to repeat the same questions, Mr. Tily objected under Rule 30(d)(3), stating: "This deposition is being conducted in bad faith.  It is being used in a manner to unreasonably annoy and embarrass the witness here, and if this continues, this will need to end under Federal Rule of Civil Procedure 30(d)(3)(a)."[58]  At that point, Mr. Stephenson made his first call to the court.

Similar exchanges continued, with Mr. Stephenson asking extensive, repetitive questions on topics such as what Mr. Sindt's stepson (who now works for Mr. Kolkman) did when he worked for Mr. Sindt, what actions were authorized by the writs of execution Mr. Sindt handled, and whether Mr. Sindt transferred his business to Michael Erickson (another nonparty).  Notably, these questions concerned events before Mr. Sindt's 2019 retirement, many years before the alleged collection actions at issue in this case.  Nevertheless, Mr. Sindt appears to have answered the questions to the best of his ability.  After the same or similar questions were asked and answered multiple times, Mr. Tily reasonably objected that further questions on the same topics were burdensome, harassing, and pursued in bad faith.

Throughout the deposition Mr. Stephenson referred to Mr. Sindt's "company," while Mr. Sindt clarified he was a Salt Lake County constable (first an elected position,

---

[56] (*Id.* at 63:5–23, 65:7–12, 67:24–68:5.)

[57] (*Id.* at 64:8–9, 66:9–13, 66:24–67:2, 67:22.)

[58] (*Id.* at 69:5–10.)

and later an appointed position).[59]  Even after this clarification, Mr. Stephenson continued to refer to Mr. Sindt's company.  This led to the following exchange, during which Mr. Stephenson belittled Mr. Sindt:

> Q.  In your company, who answered the phone?
> A.  It wasn't a company, sir.
> MR. STEPHENSON:  Objection; nonresponsive.
> THE WITNESS:  Well, why do you put it in –
> Q.  (BY MR. STEPHENSON) So you don't get to micromanage my words.
> When you -- when you –
> A.  How can I answer it then?
> Q.  Okay.  What would you like me to call your business?
> A.  Constable's office.
> Q.  **You don't deserve the constable's office title.**[60]

Mr. Stephenson had no conceivable good faith basis for this comment.  It was not a question.  It sought no information from Mr. Sindt.  It was a direct, personal attack.  Its only plausible purpose was to unreasonably annoy, embarrass, and oppress Mr. Sindt.  Even if Mr. Stephenson's uncivil conduct throughout the deposition were set aside, this remark, alone, justified terminating it.

Mr. Tily objected to this remark but allowed the deposition to continue.  He ultimately ended the deposition after Mr. Sindt testified he had loaned money to Mr. Kolkman during the last thirty years, and Mr. Stephenson asked: "How much did you loan him?"[61]  Stating Mr. Sindt had already answered the question, Mr. Tily explained he was ending the deposition under Rule 30(d)(3)(A) because it was being conducted in

---

[59] (*Id.* at 58:4–5, 18–19.)

[60] (*Id.* at 84:1–12 (emphasis added).)

[61] (*Id.* at 139:12–140:16.)

bad faith and being used to unreasonably annoy and embarrass Mr. Sindt.[62]  Ms. Berry now argues Mr. Tily unreasonably terminated the deposition because Mr. Stephenson had not asked this question before and it was unobjectionable.[63]  While Ms. Berry is correct that Mr. Stephenson had not asked this particular question, Mr. Stephenson's conduct to that point justified terminating the deposition.  The fact that Mr. Tily permitted the deposition to continue beyond the point when termination was justified, and ended it after an apparently innocuous question, does not negate Mr. Stephenson's prior conduct meriting termination.

In finding the termination justified, the court also credits the statements in Mr. Tily's affidavit that "Mr. Sindt became visibly shaken, disoriented, and confused" during the deposition.[64]  Ms. Berry has offered no contrary evidence, and although Mr. Stephenson videotaped the deposition, he has not provided the video to the court or Mr. Sindt.[65]  While the transcript alone shows termination was justified, Mr. Tily's unrebutted observations regarding Mr. Sindt's demeanor further support a finding that the deposition was conducted in a manner that unreasonably annoyed, embarrassed, or oppressed him.

---

[62] (*Id.* at 140:17–24.)

[63] (Mot. for Sanctions 3, Doc. No. 83.)

[64] (Tily Aff. ¶ 17, Doc. No. 69-1.)

[65] Mr. Sindt and the Kolkman Defendants have moved to compel production of the video.  (Doc. Nos. 87 & 90.)  These motions are addressed in a separate order issued contemporaneously.

3.  <u>Mr. Tily Did Not Impede, Delay, or Frustrate a Fair Examination of Mr. Sindt</u>

Ms. Berry argues Mr. Tily impeded, delayed, and frustrated a fair examination of Mr. Sindt by making improper objections.[66]  Specifically, she contends Mr. Tily objected on improper grounds and made "speaking" objections with the effect of coaching Mr. Sindt and, at times, preventing him from answering.[67]  Considering the deposition as a whole, Mr. Tily did not impede a fair examination of Mr. Sindt.

Rule 30(c)(2) provides deposition objections "must be stated concisely in a nonargumentative and nonsuggestive manner."[68]  "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."[69]  The District of Utah's Local Civil Rules provide that deposition objections "must be concise and must not suggest answers to or coach the deponent."[70]  Under this rule, "[a]n attorney making a statement or objection that has the effect of coaching the deponent or suggesting an answer may be sanctioned."[71]

---

[66] (Mot. for Sanctions, Doc. No. 83); *see also* Fed. R. Civ. P. 30(d)(2) (permitting courts to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent").  Ms. Berry also contends Mr. Tily impeded the deposition by improperly terminating the deposition, but termination was justified as explained above.

[67] (Mot. for Sanctions 5–7, Doc. No. 83.)

[68] Fed. R. Civ. P. 30(c)(2).

[69] *Id.*

[70] DUCivR 30-1(c).

[71] *Id.*

Ms. Berry first contends Mr. Tily made improper "asked and answered" objections.[72] She argues "asked and answered" is not a proper deposition objection, and claims there is nothing wrong with asking a question multiple times in different ways.[73] But even assuming an "asked and answered" objection is improper, Mr. Tily combined it with objections to badgering, harassment, bad faith, annoyance, and embarrassment.[74] Indeed, when Mr. Stephenson specifically challenged the propriety of "asked and answered" objections during the deposition, Mr. Tily clarified:

> I'm not objecting on asked and answered. I'm objecting because they have been asked multiple times the same way, that the witness is being harassed, and that this deposition is being conducted in bad faith. And I've seen my client being harassed, I'm making that objection. And I'm also noting that for the record, my objection is harassment, burdensome, that the – that these questions are being used to unreasonably annoy and embarrass my client and – who is the deponent, and I'm not going to let this continue under Federal Rule of Civil Procedure 30(d)(3)(a) if this deposition continues to be conducted in bad faith.[75]

In other words, Mr. Tily made clear he objected to repetitive questioning because it was badgering and harassing; it demonstrated bad faith and caused unreasonable annoyance, embarrassment and oppression under Rule 30(d)(3)(A). For the reasons described above, this objection was, on the whole, meritorious. To be sure, in some instances, Mr. Tily's objections on this ground could be characterized as overzealous or premature. But given Mr. Stephenson's overall conduct during the deposition, Mr. Tily's objections to repetitive questioning were largely justified.

---

[72] (Mot. for Sanctions 5–6, Doc. No. 83.)

[73] (*Id.*)

[74] (Sindt Dep. 22:14–16, 22:21, 47:22–23, 86:13–16, 76:3–5, 123:4–13, Doc. No. 83-1.)

[75] (*Id.* at 74:7–20.)

Ms. Berry also takes issue with Mr. Tily's references to Mr. Sindt's age and ability to remember.[76]  In some instances, Mr. Tily referenced Mr Sindt's age in appealing to Mr. Stephenson to conduct the deposition more civilly.[77]  Other times, he referenced Mr. Sindt's age and apparent confusion in explaining he was prepared to terminate the deposition under Rule 30(d)(3).[78]  Overall, Mr. Tily's references to Mr. Sindt's age and ability to remember reflect reasonable attempts to reign in Mr. Stephenson's uncivil conduct rather than improper coaching.

As to other allegations of coaching, Mr. Tily sometimes explained his objections rather than stating them concisely.  But this was largely in response to Mr. Stephenson challenging the objections as improper, as in the example above.  In other words, Mr. Stephenson invited the explanations by arguing with Mr. Tily about the objections.  After a thorough review of the transcript, there is no basis to conclude Mr. Tily improperly coached Mr. Sindt.

Ms. Berry's assertion that Mr. Tily prevented Mr. Sindt from answering is also unfounded.  On only one occasion, Mr. Tily improperly instructed Mr. Sindt not to answer a question based on an "asked and answered" objection—stating, "You don't have to answer a question you've already [answered]."[79]  But this was harmless

---

[76] (Mot. for Sanctions 6, Doc. No. 83.)

[77] (*See, e.g.*, Sindt Dep. 16:3–5 ("I'm just going to note that Mr. Sindt is 81 years old. I'm just asking you to repeat the question for him, please."), 20:17–20 ("I'm noting that he's 81 years old.  If we could please ask questions civilly . . . he'll be able to answer" (during which Mr. Stephensen interjected: "Answer the question.")), Doc. No. 83-1.)

[78] (*See, e.g.*, *id.* at 70:3–11, 78:8–23.)

[79] (*Id.* at 22:21–24.)

because Mr. Stephenson had already asked the question (about how Mr. Sindt prepared for the deposition), Mr. Sindt had previously answered it—and Mr. Stephenson later asked the same or similar questions and follow-up questions, which Mr. Sindt also answered.[80] All other times, Mr. Tily properly instructed Mr. Sindt to answer after objecting on grounds other than privilege. On many occasions, after Mr. Tily objected, Mr. Stephenson argued with Mr. Tily about the objection rather than allowing Mr. Sindt to answer—making any failure to answer attributable to Mr. Stephenson, not Mr. Tily. Ultimately, Mr. Stephenson does not identify any topic Mr. Tily prevented Mr. Sindt from testifying about, apart from the last question—by which time Mr. Tily was justified in terminating the deposition.

In sum, Mr. Tily did not impede, delay, or frustrate a fair examination of Mr. Sindt. Rather, he reasonably objected to the unfair, hostile manner in which Mr. Stephenson conducted the deposition. Accordingly, there is no basis to impose sanctions on Mr. Tily or to order him to pay expenses.

4. No Further Deposition of Mr. Sindt Is Permitted

Good cause supports Mr. Sindt's request for a protective order prohibiting Ms. Berry from further deposing him in this case. As described above, Mr. Stephenson used the deposition to unreasonably annoy, embarrass, and oppress Mr. Sindt—and to directly demean him. In view of Mr. Stephenson's conduct, no time or subject-matter limitations would sufficiently protect Mr. Sindt from oppression and abuse. Particularly where Mr. Sindt is a nonparty, a protective order prohibiting any further deposition of him is justified.

---

[80] (*See id.* at 22:6–20, 29:10–31:7.)

18

Mr. Stephenson's conduct following the deposition, as described in Mr. Tily's affidavit, also supports this ruling. According to Mr. Tily, immediately after he ended the deposition, Mr. Stephenson told Mr. Sindt he was going to sue him.[81] Mr. Tily saw this threat as an attempt "to intimidate Mr. Sindt and to either elicit some kind of distress response or affect his testimony, if the deposition continues."[82] Mr. Stephenson does not dispute he said this or explain his intent—Ms. Berry's briefing simply does not address it. Considered in light of Mr. Stephenson's prior conduct, this statement further supports the need for a protective order prohibiting any further deposition of Mr. Sindt in this case.

Ms. Berry argues prohibiting her from further deposing Mr. Sindt would prejudice her because he has information relevant to this case.[83] She contends he is "the creator of the fraudulent business practices at issue," he transferred his business model to other constables including Rob Kolkman, and his stepson later worked for Mr. Kolkman using the same business practices.[84] She argues Mr. Sindt's testimony regarding his stepson's "involvement, training, and participation in the creation and management of these businesses[] is therefore directly relevant to the claims and defenses."[85] Notably, Ms. Berry does not claim Mr. Sindt had any involvement in or knowledge of the alleged attempts to collect a debt from her in 2023 and 2024—the basis for this case. But even

---

[81] (Tily Aff. ¶ 27, Doc. No. 69.)

[82] (*Id.* ¶ 29.)

[83] (Opp'n to First Mot. for PO 6–8, Doc. No. 82.)

[84] (*Id.* at 6–7.)

[85] (*Id.* at 7.)

assuming the topics she identifies are somehow relevant, Mr. Stephenson already questioned Mr. Sindt on these topics extensively during his deposition.  Indeed, Mr. Sindt answered dozens of repetitive questions regarding his business practices and his stepson's activities.  Ms. Berry had an adequate opportunity to depose Mr. Sindt on these topics, and she has not shown precluding further duplicative questioning would unfairly prejudice her.

Next, Ms. Berry argues the line of questioning Mr. Stephenson was pursuing when the deposition ended is also relevant.  She explains Mr. Kolkman testified that his company (Constable Kolkman LLC) paid Mr. Sindt fifty percent of its profits, but the company's Rule 30(b)(6) designee (Mr. Sindt's stepson) testified those payments were made to repay a loan.[86]  Ms. Berry asserts Mr. Sindt's testimony on this issue bears on witness credibility, "the financial and agency relationships between them, whether the business was operating as a joint enterprise, and whether [Mr. Sindt] is one of the John Doe Defendants listed in this and eight other cases."[87]  But Mr. Sindt has not been named as a defendant.  And Ms. Berry does not explain how any of this relates to the existing claims and defenses in this case, or what claims she would bring against Mr. Sindt if he were named as a party.  Further, Mr. Sindt testified about this topic before the deposition ended: he denied that Mr. Kolkman paid him anything to "take over [Mr. Erickson's] business," and he explained that Mr. Kolkman made payments to him to repay a loan.[88]  Mr. Tily ended the deposition when Mr. Stephenson asked Mr. Sindt

---

[86] (*See id.*)

[87] (*Id.*)

[88] (Sindt Dep. 138:16–140:4, Doc. No. 83-1.)

how much he loaned Mr. Kolkman, preventing Mr. Sindt from answering.[89] But, again, Ms. Berry fails to explain how the answer to that question, or other questions on this topic, relates to any claim or defense.

In sum, Ms. Berry has not shown any topic she seeks to pursue in a reopened deposition is relevant, and she has already deposed Mr. Sindt extensively on many of these topics. She simply has not shown a need for additional testimony from Mr. Sindt justifies subjecting him to a continued deposition, given Mr. Stephen's prior oppressive conduct. Finally, Ms. Berry contends prohibiting a further deposition of Mr. Sindt would "deny her right to due process."[90] But she fails to support this conclusory statement with any legal authority. Accordingly, it is not addressed.[91]

## CONCLUSION

Mr. Sindt's motions for a protective order[92] are granted. Ms. Berry's motion for sanctions and an award of expenses[93] is denied. Because Ms. Berry's counsel used

---

[89] (*Id.* at 140:15–24.)

[90] (Opp'n to First Mot. for PO 8, Doc. No. 82; Opp'n to Second Mot. for PO 10, Doc. No. 101.)

[91] *See Cahill v. Am. Family Mut. Ins. Co.*, 610 F.3d 1235, 1238–39 (10th Cir. 2010) (noting the court need not address conclusory arguments unsupported by relevant authority).

[92] (Doc. Nos. 69 & 86.)

[93] (Doc. No. 83.)

Mr. Sindt's deposition to unreasonably annoy, embarrass, and oppress him, Mr. Sindt's counsel properly terminated the deposition and Ms. Berry is prohibited from resuming it.

DATED this 27th day of May, 2026.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge